UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RANDALL YANKER,

                              Plaintiff,

            v.

ZOOMCAR, INC.,

                              Defendant.

---

23-cv-6847 (SHS)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.

I.    BACKGROUND

According to the complaint in this action, Randall Yanker is a private consultant with more than forty years of experience on Wall Street who provides corporate clients with strategic and financial advice. (Complaint, ECF No. 1 ¶¶ 9-10.) He is also the senior partner and founder of the private investment firm Alternative Asset Managers, II LLC. (*Id.* ¶ 11.)

Defendant Zoomcar, Inc., is a car rental company headquartered in Bengaluru, India. (*Id.* ¶¶ 15-16.) It was founded in 2012 by Greg Moran and David Back. (*Id.* ¶ 17.) When the complaint was filed in August 2023, Moran was Zoomcar's CEO and had led Zoomcar since its inception. (*Id.* ¶¶ 18-19.) Zoomcar operates globally and is incorporated in the state of Delaware. (*Id.* ¶ 15.)

The action centers around the alleged breach of a contract—the "Consulting Agreement"—between Yanker and Zoomcar entered on October 16, 2020, and effective as of May 1, 2020. (*Id.* ¶¶ 45, 54.) Specifically, the action focuses upon Zoomcar's failure to pay Yanker a contingent fee pursuant to the Consulting Agreement in connection with two alleged corporate transactions. The first corporate transaction is an unregistered securities offering that was agreed to in April 2021 and that closed in November 2021 ("2021 Corporate Transaction"). (*Id.* ¶ 82.) The second is a merger that was entered into on October 13, 2022 ("2022 Corporate Transaction") (*id.* ¶ 111), by which time Zoomcar had already terminated the Consulting Agreement. It had done so in writing on January 7, 2022. (*Id.* ¶ 100.) The Consulting Agreement provides that Zoomcar may terminate Yanker at any time, "subject to [his] continuing right to any Performance Bonus." (ECF No. 1, Ex. A ¶ 7.) This "Performance Bonus" is itself defined in the Consulting Agreement as being provided "[i]n connection with any Corporate Transaction," with no time limitation set forth. (*Id.*, Ex. A ¶ 6.) The Performance Bonus consists of both cash and warrants to purchase stock in Zoomcar based on a formula set forth in the Consulting Agreement. (*Id.*)

Yanker alleges four causes of action. The first cause of action is for breach of the Consulting Agreement with respect to the 2021 Corporate Transaction. The second cause of action is also for breach of the Consulting Agreement, this time with respect to the 2022 Corporate Transaction. The third cause of action alleges anticipatory breach of contract; the fourth cause of action seeks a declaration that Yanker has a continuing right to be paid under the Consulting Agreement.

Zoomcar has moved to dismiss each of Yanker's four causes of action.

## II.    DISCUSSION

### A.  2021 Corporate Transaction (First Cause of Action)

Pursuant to the Consulting Agreement, a "Corporate Transaction" is "a transaction or related series of transactions involving a merger, share capital exchange, asset acquisition, share purchase, joint venture or partnership transaction, issuance of equity or debt securities, whether public or private (other than primarily for capital-raising purposes), reorganization or similar corporate transaction." (ECF No. 1, Ex. A ¶ 6.)

Yanker alleges that "in or about April 2021, Zoomcar executed a definitive agreement for an unregistered securities offering through which it raised $100,000,000 (the "2021 Corporate Transaction") at an enterprise valuation of $250,000,000." (ECF No. 1 ¶ 82.) He further alleges that he helped guide Zoomcar through the 2021 Corporate Transaction, which ultimately closed in November 2021. (*Id.* ¶¶ 84, 97.)

As noted above, Zoomcar terminated the Consulting Agreement with Yanker by letter dated January 7, 2022 (*id.* ¶ 100) and has failed to pay Yanker his Performance Bonus in connection with the 2021 Corporate Transaction, which is allegedly worth $5,625,000. (*Id.* ¶¶ 98, 122.)

"To state a claim in federal court for breach of contract under New York law, a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996). A breach of contract claim may be dismissed when the alleged breach of contract applies to an activity that is specifically excluded by, or outside of the scope of, the contract. *See Sudarsan v. Seventy Seven Energy Inc.*, No. 17-cv-2342, 2018 WL 1088004, at *6 (S.D.N.Y. Feb. 6, 2018).

Zoomcar asserts that it has not breached the contract and that the complaint should be dismissed because, by the plain terms of the Consulting Agreement, the 2021 Corporate Transaction was outside of the Consulting Agreement's definition of Corporate Transactions because the Consulting Agreement states that transactions "primarily for capital-raising purposes" are excluded from the definition of Corporate Transactions. (ECF No. 1, Ex. A ¶ 6.) Since the complaint itself states that Zoomcar

"raised" $100,000,000 in that securities offering (ECF No. 1 ¶ 82), Zoomcar concludes that the offering was "primarily for capital-raising purposes" and that therefore it was not obligated to pay a Performance Bonus and did not breach the Consulting Agreement. (ECF No. 8 at 7.)

However, the critical question is not whether the 2021 unregistered securities offering raised capital—it is uncontested that it did—but whether it was *primarily* for capital-raising purposes. If it *was* primarily for capital-raising purposes, then it is outside of the contractual scope and Zoomcar did not commit a breach of contract on this ground. However, if it was *not* primarily for capital-raising purposes, then it meets the Consulting Agreement's definition of a Corporate Transaction and Zoomcar would have committed a contractual breach.

This manifestly is a question of fact and therefore cannot be resolved on the pleadings because "[f]act-specific question[s] cannot be resolved on the pleadings." *Anderson News, LLC v. American Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) (quoting *Todd v. Exxon Corp.*, 275 F.3d 191, 203 (2d Cir. 2001)). Thus, dismissal of the first cause of action on this ground would be improper. As Yanker identifies in his opposition to Zoomcar's motion to dismiss, there are a variety of possible primary purposes of the securities offering other than for capital-raising, including restructuring existing share classes, adding new strategic partners as investors, or allowing corporate insiders to consolidate control. (*See* ECF No. 11 at 12.) In sum, the issue of whether the 2021 Corporate Transaction was "primarily for capital-raising purposes" is a question of fact prohibiting dismissal of the cause of action for breach of contract based on the 2021 Corporate Transaction at this time.

Alternatively, Zoomcar asserts that Yanker cannot be paid a Performance Bonus pursuant to the unregistered security offering because he is not a registered broker with the SEC. Zoomcar relies on the provision of the Securities Exchange Act of 1934 that it is unlawful for an individual "to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security (other than an exempted security or commercial paper, bankers' acceptances, or commercial bills) unless such broker or dealer is registered in accordance with subsection (b) of this section." 15 U.S.C. § 78o(a)(1).

"To find a contract unenforceable for illegality at the pleading stage, the question is whether the contract 'on its face' requires the unregistered [individual] to perform broker services." *Antares Mgmt. LLC v. Galt Glob. Capital, Inc.*, No. 12-cv-6075, 2013 WL 1209799, at *9 (S.D.N.Y. Mar. 22, 2013). If nothing in the contract prevents it from being lawfully performed without broker registration, the contract is not a voidable unlawful contract. *See EMA Financial, LLC v. Vystar Corp.*, No. 19-cv-1545, 2021 WL 1177801, at *2-3 (S.D.N.Y. Mar. 29, 2021).

The Consulting Agreement sets forth that Yanker's consulting duties include, *inter alia*, "seeking and negotiating strategic and corporate transactions" (ECF No. 1, Ex. A ¶ 1), but this falls well short of making broker services a contractual requirement. Even if the contract could be read as *requiring* Yanker to seek and negotiate strategic and corporate transactions, he could easily do that without venturing into the realm of securities transactions—and, therefore, need not perform broker services as defined by the Securities Exchange Act of 1934.

Nothing in the contract requires Yanker to perform broker services, and the contract can be performed without broker registration. Thus, the Consulting Agreement cannot be found unenforceable for illegality at this motion to dismiss stage.

### B. 2022 Corporate Transaction (Second Cause of Action)

Yanker alleges that "on October 13, 2022, Zoomcar entered into a definitive Agreement and Plan of Merger and Reorganization (the 'Definitive Merger Agreement') with Innovated International Merger Sub, Inc." (ECF No. 1 ¶ 111.) The Consulting Agreement includes both mergers and reorganizations within its definition of Corporate Transactions. (*See* ECF No. 1, Ex. A ¶ 6.) Yanker asserts that the Corporate Transaction values Zoomcar at $456 million (ECF No. 1 ¶ 114) and that he is entitled to $10,260,000 pursuant to the formula set forth in the Consulting Agreement. (*Id.* ¶ 127.)

As already noted, Zoomcar terminated its Consulting Agreement with Yanker by letter dated January 7, 2022. (*Id.* ¶ 100.) The Consulting Agreement sets forth that Yanker's "services to the Company will be at-will, meaning that either you or the Company may terminate your service at any time, for any reason or no reason." (ECF No. 1, Ex. A ¶ 7.) However, the at-will provision goes on to state that termination is "subject to [Yanker's] continuing right to any Performance Bonus, as set forth in Paragraph 6, above." (*Id.*) Paragraph 6 of the Consulting Agreement states that "[i]n connection with *any* Corporate Transaction, [Yanker] shall receive a performance bonus." (*Id.*, Ex. A ¶ 6 (emphasis added).) The apparent conflict in those two contractual provisions—one providing that the contract was terminable at will and the other making the termination subject to Yanker's "continuing right to any Performance Bonus"—cannot be resolved on the face of the contract itself, and must await discovery proceedings. Zoomcar's motion to dismiss the second cause of action is denied.

### C. Anticipatory Repudiation (Third Cause of Action)

Yanker's third cause of action is for anticipatory breach of contract in light of Zoomcar's termination letter to Yanker, which allegedly "unequivocally repudiated Zoomcar's obligations to perform under the Consulting Agreement." (ECF No. 1 ¶¶ 131-32.)

Zoomcar seeks to dismiss Yanker's claim for anticipatory repudiation on the grounds that it is duplicative of the first and second causes of action—the breach of contract claims as to the 2021 and 2022 Corporate Transactions. *See Waite v. Schoenbach*, No. 10-cv-3439, 2010 WL 4456955, at *7 (S.D.N.Y. Oct. 29, 2010).

In response, Yanker contends that the third cause of action is not duplicative of the two breach of contract claims because it seeks different relief than those contract claims. Specifically, Yanker states that the first cause of action seeks the full Performance Bonus for the 2021 Corporate Transaction; the second cause of action seeks the non-cash portion of the Performance Bonus for the 2022 Corporate Transaction; and the third cause of action seeks the $1 million cash portion of the Performance Bonus of the 2022 Corporate Transaction. (ECF No. 11 at 18-19.)

However, Yanker's contention is belied by the pleadings themselves. The second cause of action seeks "a Performance Bonus in the form and amount agreed upon in the Consulting Agreement upon the execution and closing of the 2022 Corporate Transaction." (ECF No. 1 ¶ 126.) Since the non-cash portion of the Performance Bonus is paid at the execution of the transaction, and the cash portion is paid at the closing of the transaction, both the non-cash and cash portions are accounted for and sought in the second cause of action. (*See* ECF No. 1, Ex. A ¶ 6.) Thus, the third cause of action—for anticipatory repudiation—is dismissed as duplicative.

### D. Declaratory Judgment (Fourth Cause of Action)

Yanker's fourth cause of action is for declaratory judgment. Yanker seeks judgment declaring that he has a continuing right to payment under the Consulting Agreement, given that the Consulting Agreement sets forth that any termination by Zoomcar of the Consulting Agreement is "subject to [Yanker's] continuing right to any Performance Bonus, as set forth in Paragraph 6." (ECF No. 1, Ex. A ¶ 7.) Yanker asserts that there is an actual controversy over parties' rights and obligations because Zoomcar claims that it does not have any continuing rights or obligations pursuant to the Consulting Agreement. (ECF No. 1 ¶ 136.)

The Declaratory Judgment Act sets forth that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Second Circuit "ha[s] consistently interpreted this permissive language as a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear." *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003).

The district court's exercise of discretion is informed by the following six factors, to the extent those factors are relevant to a given case:

> (1) "whether the [declaratory] judgment [sought] will serve a useful purpose in clarifying or settling the legal issues involved"; (2) "whether [such] a judgment would finalize the controversy and offer relief from uncertainty"; (3) "whether the proposed remedy is being used merely for procedural fencing or a race to res judicata"; (4) "whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court"; (5) "whether there is a better or more effective remedy," *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 105 (2d Cir. 2012) (citations omitted); and (6) whether concerns for "judicial efficiency" and "judicial economy" favor declining to exercise jurisdiction, *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 141, 149 (2d Cir. 2014) (citation omitted).

*Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99-100 (2d Cir. 2023).

Courts have "broad discretion to weigh the factors" and "no one factor is sufficient, by itself, to mandate that a district court exercise—or decline to exercise—its jurisdiction to issue a declaratory judgment." *Id.* at 100. Moreover, these six factors are non-exhaustive and "district courts retain[] wide latitude to address other factors as relevant to the ultimate question of whether 'the normal principle that federal courts should adjudicate claims [over which they have] jurisdiction' should 'yield[] to considerations of practicality and wise judicial administration' in a particular case." *Id.* (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995)).

Applying the factors limned by the Second Circuit in *Admiral Insurance*, the Court declines to exercise jurisdiction over the fourth cause of action.

The first factor to consider is whether the desired declaratory judgment would serve a useful purpose in clarifying or settling the legal issues involved. Here it would not, because the declaratory judgment sought is functionally duplicative of the second cause of action for breach of contract concerning the 2022 Corporate Transaction. In order to prevail on the second cause of action, Yanker would need to show that he has a continuing right to Performance Bonuses for future Corporate Transactions, as he is seeking payment pursuant to the Consulting Agreement for a transaction that Zoomcar entered into following the termination of that agreement. This subsumes the remedy Yanker seeks in his fourth cause of action—a judgment declaring that he has a continuing right to payment under the Consulting Agreement. *See Farsura v. QC Terme*

*US Corp.*, No. 21-cv-9030, 2022 WL 4226266, at *10 (S.D.N.Y. Sept. 13, 2022). The Court ascribes significant weight to this factor, as it reveals that the declaratory judgment sought by Yanker is rendered effectively superfluous by the second cause of action.

It follows that little weight should be given to the second factor, which considers whether the declaratory judgment would finalize the controversy and offer relief from uncertainty, as the second cause of action will already operate to provide that finality and relief from uncertainty. The third and fourth factors—concerning whether the proposed remedy is being used for procedural fencing or a race to res judicata and whether using declaratory judgment would place the federal court in tension with a sovereign legal system or state or foreign court, respectively—are minimally relevant to this case. Since the second cause of action more than covers what Yanker seeks in declaratory judgment, it is the better or more effective remedy, meaning that the fifth factor weighs against exercising jurisdiction. So too for the sixth factor—declining to accept jurisdiction over the declaratory judgment cause of action better furthers judicial efficiency and judicial economy than exercising jurisdiction would.

As the above analysis illuminates, the factors laid out in *Admiral Insurance* militate against exercising jurisdiction pursuant to the Declaratory Judgment Act. Therefore, the Court declines to exercise jurisdiction over the declaratory judgment sought by Yanker and dismisses the fourth cause of action.

### III.   CONCLUSION

For the foregoing reasons, Zoomcar's motion to dismiss the complaint is denied as to the first and second causes of action for breach of contract and granted as to the third cause of action for anticipatory repudiation and the fourth cause of action for a declaratory judgment.

Dated: New York, New York
       September 16, 2024

SO ORDERED:

Sidney H. Stein, U.S.D.J.

7